UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ALLEN BRAINERD,

    Plaintiff,

v.                                                          Case No. 1:15-cv-872
                                                                     Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of October 3, 1972, which was later amended to October 27, 2012. PageID.35, 216. He identified his disabling conditions as being mildly autistic, with the mental capacity of a 10-year-old. PageID.220. Prior to the alleged disability onset date, plaintiff had previous employment as a janitor and utility maintenance worker (industrial cleaner). PageID.96, 221, 260. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 21, 2014. PageID.35-45. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended disability onset date of October 27, 2012, and that he meets the insured status requirements of the Act through December 31, 2016. PageID.37. At the second step, the ALJ found that plaintiff had severe impairments of a vision impairment, mild mental retardation, and autistic disorder. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.38.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Simple routine and repetitive tasks in a work environment free of fast-paced work requirements involving only simple work-related decisions and routine workplace changes. He would likely be off tasks eight percent of the work period. Limited to occupations which require no more than occasional depth perception and no commercial driving.

PageID.40. The ALJ found that plaintiff could perform his past relevant work as a cleaner and janitor, because such work did not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.43.

Although finding that plaintiff could perform his past relevant work, the ALJ proceeded to step five where he found that plaintiff could perform a significant number of unskilled jobs at all exertional levels. PageID.44. Specifically, the ALJ found that plaintiff could perform

unskilled work in the national economy such as lumber sorter (700 jobs locally and 15,000 jobs nationally); box bender (5,000 jobs locally and 104,000 jobs nationally); and "cleaner II" (6,700 jobs locally and 200,000 jobs nationally). *Id.* Although the ALJ did not define the local economy, the vocational expert (VE) identified the region as the State of Michigan. PageID.98-99. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 27, 2012 (the amended disability onset date) through May 21, 2014 (the date of the decision). PageID.44-45.

### III. ANALYSIS

Plaintiff did not include a statement of errors as directed by the Court. *See* Notice (docket no. 9). Based on a review of plaintiff's brief, the Court has identified three issues raised in this appeal.

> **A.  The ALJ improperly evaluated the opinions of plaintiff's treating psychologist, James Benthem, Ph.D.**

The medical record in this case contains only three exhibits, one of which (Exh. 2F), contains three documents from Dr. Benthem: a letter "to whom it may concern" from January 11, 2012; a psychological assessment from May 30, 2011; and another letter "to whom it may concern" from July 20, 2011 related to the criminal conduct. PageID.318-322. These records refer to three sessions of therapy in 2010, and perhaps additional sessions related to a charge of criminal sexual conduct in April 2011. There are no treatment notes or other medical records from Dr. Benthem related to plaintiff's therapy. Plaintiff contends that the ALJ failed to give Dr. Benthem's opinions deference as the opinions of a treating physician.

5

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision

for the weight we give your treating source's opinion").

In the May 30, 2011 assessment, Dr. Benthem noted that plaintiff's test results reflected a composite IQ score of 64 and concluded:

> Overall, results indicate that Mr. Brainerd has very limited intellectual abilities. He likely has difficulty comprehending even basic tasks. At this level, he likely requires assistance in advanced daily living skills, such as managing his finances. These results are consistent with his history of requiring special education services while in school.

PageID.319. Although plaintiff was over 38 years old at the time, Dr. Benthem's evaluation did not include any background information on plaintiff, other than that plaintiff was legally blind in the left eye (which did not appear to affect his performance on visual tasks during the examination), and plaintiff's report that he had an abnormal MRI five years prior to the exam which indicated "a slight stroke" from which he had a spontaneous recovery. To the extent that Dr. Benthem commented on plaintiff's physical impairments, he did not have the expertise to testify regarding plaintiff's alleged disability due to these physical limitations. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (noting that a psychologist is not qualified to diagnose a claimant's physical limitations).

The ALJ addressed Dr. Benthem's opinions as follows:

> James Benthem, Ph.D., reported in July 2011 that he had seen the claimant for three sessions in the fall of 2010. The claimant returned to therapy in April 2011 in connection with an allegation of criminal sexual conduct. The claimant was subsequently incarcerated on this charge from December 27, 2011 through October 25, 2012. There is no indication the claimant returned to counseling following his release. (Exhibits lB and 2F, page 4)
>
> Dr. LaMonde [who examined plaintiff with Dr. Benthem] reported the claimant was cooperative and attentive throughout the examination. Although she opined the claimant likely had difficulty comprehending even basic tasks, this is not consistent with the evidence as a whole. The claimant reported he has not had any driving accidents due to his impairments. He told Dr. Findley that he completed two years at the CareerTech Center where he studied small engine repair. Although he

7

>    never worked in that area, he reported that he works on his truck and shops for auto parts and tools on his own. (Exhibits 6E, page 4 and 2F, pages 2 and 3)
>
> \*   \*   \*
>
>    Mr. Campbell [plaintiff's attorney] noted that Dr. Benthem described the claimant as "mentally a child in an adult body". Dr. Benthem also claimed that individuals with the claimant's level of cognitive impairment required ongoing supervision, guidance, and assistance. These statements are not consistent with the overall evidence. The claimant does not require ongoing supervision and can independently perform activities of daily living. He has asked for, and received, assistance with finances in the past. However, he reported he could pay bills, count change, and shop. He said he could not manage a checkbook or money orders. Mr. Campbell noted the claimant's father stated the claimant had been taught to work and be independent. (Exhibit 13E, pages 1 and 3)
>
>    Furthermore, the claimant was able to maintain employment with the same company for many years. That employment ended when he was incarcerated. There is no objective evidence to suggest the claimant would not continue to be employed at that company had he not been incarcerated.
>
> \*   \*   \*
>
>    Mr. Campbell asserted that Dr. Benthem's opinion should be given more consideration based on his treating status with the claimant. However, Dr. Benthem saw the claimant three times in the fall of 2010 and an unknown number of times after April 2011. The record does not contain any treating notes from Dr. Benthem. Additionally, Dr. Benthem's statement from July 2011 is directed more at the claimant's crime and the likelihood of recurrence rather than a statement of disability. Furthermore, Dr. Benthem's opinion is appears to be based primarily on the claimant's IQ score without consideration of the claimant's adaptive functioning. (Exhibit 2F, pages 4 and5)

PageID.41-43. Ultimately the ALJ gave great weight to the opinion of the examining psychologist, James Findley, Ph.D. PageID.42-43.

It is unclear whether the ALJ considered Dr. Benthem to be a treating physician. While it appears that the ALJ rejected most of Dr. Benthem's opinion other than the IQ score, he did not do so explicitly. Despite these shortcomings, given the facts in this case, the ALJ's error is

harmless.  Even if the ALJ had explicitly classified Dr. Benthem as a treating physician, the ALJ gave good reasons sufficient to reject that opinion, observing that there were no treatment records and the doctor's cursory conclusion that plaintiff "has difficulty comprehending even basic tasks" was not supported by other evidence, such as plaintiff's work history.  An ALJ's error is evaluating a treating physician is harmless "if the ALJ has met the goals of the procedural requirement – to ensure adequacy of review and to permit the claimant to understand the disposition of his case – even though he failed to comply with the regulation's terms."  *Coldiron v. Commissioner of Social Security*, 391 Fed.Appx. 435, 440 (6th Cir. 2010) (addressing harmless error in the context of the rule requiring articulation of "good reasons" for the weight assigned to a treating physician).  Given that there are no medical records to support Dr. Benthem's opinion, a remand to clarify the ALJ's decision would be a meaningless exercise.  "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  Accordingly, this claim of error is denied.

### B. Plaintiff meets the requirements of Listing 12.05D.

Plaintiff contends that the ALJ erred by finding that he did not meet the requirements of Listing 12.05D.  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the

specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

> Listing 12.05D provides as follows:
>
> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> >
> > 2. Marked difficulties in maintaining social functioning; or
> >
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> >
> > 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.05.[1]

The ALJ accepted Dr. Benthem's opinion that in May 2011, plaintiff had a full-scale IQ score of 64. PageID.39. While plaintiff's IQ score fell within the range to necessary to meet listing 12.05D, the ALJ found that plaintiff did not meet the other requirements of the listing, i.e., plaintiff had only mild limitations in activities of daily living and maintaining social functioning, moderate difficulties in concentration persistence or pace, and no episodes of decompensation. PageID.40. The ALJ reached this determination based upon the following evaluation of the evidence:

> In activities of daily living, the claimant has mild restriction. The claimant is able to care for his personal care without assistance with occasionally reminders. He testified he has no problems with household chores. He also does yard work and shopping and can prepare meals. He spends time working on his truck. (Exhibits 5E, pages 3 and 4 and 6E, pages 3-5)
>
> In social functioning, the claimant has mild difficulties. The claimant reported he was living with his father and stepmother [Ms. Hoover]. He testified he has no difficulty getting along with others. Both the claimant and his mother indicated he attended church on a weekly basis. The claimant talks to others on the phone and he told James Findley, Ph.D., a consultative examiner, that he "hangs out" with friends who have similar interests. (Exhibits 5E, page 5; 6E, page 5; and 3F, page 3)
>
> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant and his mother reported the claimant has difficulty with attention, concentration, and focus. Ms. Hoover reported the claimant had difficulty following written instructions secondary to poor reading ability. The claimant made similar statements. She indicated the claimant's ability to maintain attention was dependent on the topic. Both indicated the claimant did better with spoken instructions and demonstration. (Exhibits 5E, page 6 and 6E, page 6)
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

---

[1] The Court notes that when the ALJ issued the decision, Listing 12.05 referred to "mental retardation" rather than "intellectual disability."

PageID.38.

The ALJ's findings are supported by other facts in the record, including plaintiff's employment record prior to his incarceration:

> The claimant has an excellent work history and was employed by the same company from May 1999 through December 2011. His job ended when he became incarcerated, not due to his impairments. He is able to communicate effectively with others, care for his personal hygiene and grooming, and do household chores. He testified he has no problems getting along with others. He told Dr. Findley he "hangs out" with some friends that share his interest in cars and trucks. He is able to drive independently, visits his mother, and attends car shows. He indicated he works on his truck and is able to shop for tools and auto parts as needed. (Testimony and Exhibits 8D; 3E, page 1; 5E, page 4; 6E, page 4; and 3F, page 3)
>
> The claimant told Dr. Findley that he completed two years at Career Tech Center where he studied small engine repair. The claimant was married and lived independently with his wife, who was disabled. He indicated his brother-in-law helped him manage his finances during that time, which suggests the claimant is able to recognize and ask for assistance in areas he needs help in. The claimant indicated he was able to complete what he started. The claimant's father reported the claimant could follow instructions. (Exhibits 6E, page 6 and 3F, page 2)

PageID.40.

The ALJ provided substantial evidence to support his finding that plaintiff failed to meet the requirements of Listing 12.05D. The fact that the record also contains evidence which could support a different conclusion does not undermine this finding. *See Willbanks*, 847 F.2d at 303. Accordingly, plaintiff's claim of error is denied.

    **C.  The ALJ engaged in "cherry picking" the evidence.**

The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir.2009). As the Sixth Circuit explained such an allegation "is seldom successful because crediting it would require a court

to re-weigh record evidence," *DeLong v. Commissioner of Social Security Administration*, 748 F.3d 723, 726 (6th Cir. 2014), an action which this Court cannot perform on appeal. *See Brainard*, 889 F.2d at 681 (this Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence). For the reasons discussed, the ALJ's decision is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 27, 2016        /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge